UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WELLS FARGO EQUIPMENT FINANCE, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 16-14777** |
| **CROSS MARITIME INC., ET AL.** | **SECTION: "H"(1)** |

## ORDER AND REASONS

Before the Court is Plaintiff's Motion for Summary Judgment (Doc. 25). For the foregoing reasons, the Motion is GRANTED.

## BACKGROUND

Plaintiff Wells Fargo Equipment Finance, Inc. ("Wells Fargo") seeks confirmation of the validity of a preferred ship mortgage on the DB CROSSMAR 21 and money judgments against Defendants Cross Maritime Inc., Cross Holdings Inc., and The Investment Group Inc. ("TIG"). Wells Fargo contends that Defendants are indebted to it pursuant to a Loan and Security Agreement ("Loan Agreement"). The Loan Agreement is evidenced by two separate promissory notes executed on June 25, 2014. The first was executed

by Cross Maritime payable to Wells Fargo in the amount of $12,462,399.30 (the "First Note"). The second was executed by Cross Maritime and TIG, on a joint and several basis, payable to Wells Fargo in the amount of $2,096,423.89 (the "Second Note"). Each note was guaranteed by Cross Holdings and secured by a First Preferred Ship Mortgage in the DB CROSSMAR 21. In addition, Wells Fargo alleges that it is the beneficiary of other security instruments, including 1) an Assignment of Charter Parties, Charter Hire and Earnings relating to earnings of the vessel (the "Charter Assignment"); 2) an Assignment of Insurances relating to policies of insurance covering the vessel (the "Insurance Assignment"); and 3) a security interest in TIG's right to Accommodation Units and an Accommodation Lease, as set forth in Section 10.4 of the Loan Agreement (the "TIG Security Agreement").

Wells Fargo alleges that Cross Maritime and TIG failed to pay installments on the Notes beginning in April 2016 and are in default. After notifying the Defendants of the amounts due, the parties entered into a forbearance agreement, which expired by its terms on June 1, 2017. Cross Maritime made payments in the amount of $350,000.00 during the period of forbearance.

Plaintiff has moved for summary judgment seeking a money judgment against the Defendants and confirmation of the validity and enforceability of its preferred ship mortgage covering the vessel DB CROSSMAR 21, as well as reimbursement of attorneys' fees and costs. Defendants responded that they "respectfully defer to this Court's determination of whether to grant or deny

2

Wells Fargo's Motion for Summary Judgment."[1] They also requested, however, a "reservation of the right to dispute the awarding and calculation of attorney's fees, if granted, and the final calculations to ensure that all lawful credits and offsets have been applied to Cross Maritime's amount owed, and to put forth available defenses on these limited matters, if necessary."[2]

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[5] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[6] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish

---

[1] Doc. 26.
[2] *Id.*
[3] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).
[4] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[5] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).
[6] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).

3

the existence of an element essential to that party's case."[7] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[8] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[9] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[10]

## LAW AND ANALYSIS

Despite Defendants' failure to raise any argument or fact contesting the merits of this motion, the Court may not simply grant the instant Motion as unopposed. The Fifth Circuit approaches the automatic grant of dispositive motions with considerable aversion.[11] Instead, the proper inquiry to an unopposed motion for summary judgment is to determine whether the facts

---

[7] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[8] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[9] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

[10] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

[11] See, e.g., Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc., 702 F.3d 794, 806 (5th Cir. 2012); Johnson v. Pettiford, 442 F.3d 917, 918 (5th Cir. 2006) (per curiam); John v. State of Louisiana (Bd. of Trs. for State Colls. and Univs.), 757 F.2d 698, 709 (5th Cir. 1985).

advanced in the motion and supported by appropriate evidence make out a prima facie case that the movant is entitled to judgment.[12]

### A. Cross Holdings' Guaranty

Plaintiff first asks for a judgment finding the guaranty of Cross Holdings to be valid and enforceable. The guaranty states that it shall be governed by the laws of New York, which provide that in order for a guaranty to be valid, it "must be a written instrument guaranteeing payment of another's debt, describing with precision the obligation to which the person is bound."[13] In addition, "[c]onsideration for the guaranty must be expressly or impliedly stated in the instrument, and the instrument must be delivered to, and accepted by, the guarantor."[14] Here, the guaranty of Cross Holdings expressly guarantees the indebtedness of Cross Maritime and TIG incurred in the Loan Agreement. The document is a written agreement signed by the CEO of Cross Holdings. There are no issues of material fact concerning the validity and enforceability of the guaranty by Cross Holdings.

### B. First Preferred Ship Mortgage on the DB CROSSMAR 21

In order to be an enforceable preferred ship mortgage, a mortgage must comply with the requirements of the Ship Mortgage Act. The Ship Mortgage Act defines a preferred ship mortgage as one that "(1) includes the whole of the vessel; (2) is filed in substantial compliance with [46 U.S.C. § 31321]; [and] (3)

---

[12] *See* Adams v. Travelers Indem. Co. of Connecticut, 465 F.3d 156, 164 (5th Cir. 2006); Eversley v. MBank Dallas, 843 F.2d 172, 174 (5th Cir. 1988).
[13] Exp.-Imp. Bank of U.S. v. Agricola Del Mar BCS, 536 F. Supp. 2d 345, 350 (S.D.N.Y. 2008), aff'd, 334 F. App'x 353 (2d Cir. 2009).
[14] *Id.*

covers a documented vessel."[15] Section 31321 requires that a preferred ship mortgage:

> (1) identify the vessel;
> (2) state the name and address of each party to the instrument;
> (3) state, if a mortgage, the amount of the direct or contingent obligations . . . that is or may become secured by the mortgage, excluding interest, expenses, and fees;
> (4) state the interest of the grantor, mortgagor, or assignor to the vessel;
> (5) state the interest sold, conveyed, mortgaged, or assigned; and
> (6) be signed and acknowledged.[16]

The mortgage at issue here was executed by Cross Maritime as owner of the CROSSMAR 21 to secure the indebtedness of Cross Maritime and TIG incurred in the Loan Agreement. It covers 100% of the CROSSMAR 21, which is a U.S. flagged vessel documented under the laws of the United States. The mortgage document meets each of the requirements set forth by the Ship Mortgage Act and was properly recorded. There is no material issue of fact as to the validity and enforceability of the preferred ship mortgage on the CROSSMAR 21.

### C. The Charter Assignment, Insurance Assignment, and TIG Security Agreement

By their terms, the Charter Assignment, Insurance Assignment, and TIG Security Agreement are governed by New York law. Under New York law, "a security interest is enforceable against the debtor and third parties with respect to the collateral only if: (1) value has been given; (2) the debtor has

---

[15] 46 U.S.C. § 31322.
[16] 46 U.S.C. § 31321(b).

rights in the collateral or the power to transfer rights in the collateral to a secured party; and . . . [(3)] the debtor has authenticated a security agreement that provides a description of the collateral."[17] Each of the aforementioned security instruments satisfy these requirements. Each acknowledge that valuable consideration was given and that security interests were granted to secure the obligations of Cross Maritime and TIG under the Loan Agreement. The agreements describe the collateral in detail and were signed and acknowledged. In addition, each was properly perfected by the filing of a UCC-1 financing statement. There is no material issue of fact as to the validity and enforceability of the Charter Assignment, Insurance Assignment, and TIG Security Agreement.

**D. Entitlement to Money Judgments**

Plaintiff has established that Cross Maritime and TIG are in default under the Loan Agreement and the Notes for failing to make payments of principal and interest due on April 30, 2016; May 30, 2016; June 30, 2016; and July 31, 2016. Wells Fargo sent a demand to Cross Maritime, TIG, and Cross Holdings on August 15, 2016 accelerating the indebtedness and notifying them of the imposition of the default interest rate of 12.35% on the principal balance. Under the terms of the Guaranty, Cross Holdings is liable as a primary obligor for the indebtedness of Cross Maritime and TIG under the Loan Agreement.

Plaintiff calculates that Cross Maritime, TIG, and Cross Holdings owe $11,365,630.63 on the First Note, inclusive of the principal, interest, and default interest, and $1,920,802.49 on the Second Note, inclusive of the

---

[17] N.Y. U.C.C. Law § 9-203.

principal, interest, and default interest. In addition, Plaintiff claims that it is entitled to late fees on the Notes in the amounts of $72,614.40 and $12,215.19, respectively. Defendants have not disputed these calculations or raised any argument contesting their accuracy. Instead, Defendants ask to reserve their right to dispute "the final calculations to ensure that all lawful credits and offsets have been applied to Cross Maritime's amount owed, and to put forth available defenses on these limited matters, if necessary." The time to raise such defenses, however, was in response to Plaintiff's request for summary judgment. Defendants' failure to raise any arguments in opposition to Plaintiff's summary judgment regarding the final calculation of liability constitutes a waiver of that issue for summary judgment purposes.[18] Accordingly, there is no material issue of fact as to Plaintiff's calculation of the amounts owed on the Notes.

### E. Attorneys' Fees

The Loan Agreement and Notes provide that Cross Maritime and TIG agree to pay all reasonable attorneys' fees and costs incurred in the collection or enforcement of any obligations or rights under the Loan Agreement or Notes. While Defendants "request reservation of the right to dispute the

---

[18] See Ledet v. Fleetwood Enterprises, Inc., 245 F.3d 791 (5th Cir. 2000) ("Ledet's failure to raise the issue in front of the district court in Opposition to Fleetwood's Motion for Summary Judgment constitutes a waiver of the issue for summary judgment purposes, regardless of whether the issue was raised in Ledet's Complaint. '[W]e have specifically refused to overturn a summary judgment motion on a theory not advanced in opposition to the motion in the district court.'").

awarding and calculation of attorney's fees," they again do not raise any argument calling into question Plaintiff's entitlement to an award of attorneys' fees. Accordingly, they have waived the opportunity to do so. The amount of attorneys' fees will be determined on separate motion pursuant to Federal Rule of Civil Procedure 54(d).

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is GRANTED, and Plaintiff is entitled to a judgment as follows:

1. Against Cross Maritime, Inc. ("Cross Maritime") and Cross Holdings, Inc., ("Cross Holdings") *in solido* in the amount of $11,365,630.63 plus interest at the rate of 12.35% per annum, accruing after June 30, 2017 on the principal balance of $10,281,479.37 until paid in full;

2. Against Cross Maritime and Cross Holdings, *in solido* for outstanding late charges in the amount of $72,614.40 plus interest at the judicial rate, accruing from the date of this judgment until paid in full;

3. Against Cross Maritime, The Investment Group, Inc. ("TIG"), and Cross Holdings, *in solido* in the amount of $1,920,802.49 plus interest at the rate of 12.35% per annum, accruing after June 30, 2017 on the principal balance of $1,729,549.69 until paid in full;

4. Against Cross Maritime, TIG, and Cross Holdings, *in solido* for outstanding late charges in the amount of $12,215.19 plus interest at the judicial rate, accruing from the date of this judgment until paid in full;

5. Against Cross Maritime, TIG, and Cross Holdings, *in solido* for reimbursement of Wells Fargo's reasonable attorneys' fees and costs of

collection to be determined by separate motion in accordance with Rule 54(d) of the Federal Rules of Civil Procedure;

6. Confirming that the First Preferred Ship Mortgage on the DB CROSSMAR 21 (Official Number 643889) granted by Cross Maritime to Wells Fargo and recorded with the United States Coast Guard, National Vessel Documentation Center on June 25, 2014 under Batch 20738800, Document ID No. 5 is properly executed and perfected under the laws of the United States and secures the indebtedness of Cross Maritime and TIG to Wells Fargo;

7. Confirming that the Assignment of Charter Parties, Charter Hire and Earnings and the Assignment of Insurances granted by Cross Maritime to Wells Fargo and included in the UCC-1 Financing Statement recorded on July 7, 2014 in Terrebonne Parish under Instrument No. 1457607 create valid and perfected security interests in the collateral described therein and secure the indebtedness of Cross Maritime and TIG to Wells Fargo; and

8. Confirming that the TIG Security Agreement granted by TIG in favor of Wells Fargo and included in the UCC-1 Financing Statement recorded on June 16, 2016 in Orleans Parish under Instrument No. 2016-24645 creates a valid and perfected security interest in the collateral described therein and secures the indebtedness of TIG to Wells Fargo.

New Orleans, Louisiana this 29th day of September, 2017.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**